# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| Jane Doe, next friend of John Doe, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Ladue Horton Watkins High School, | ) | |
| | ) | |
| Ladue School District, | ) | |
| | ) | |
| and | ) | Case No. 4:18-cv-1637 |
| | ) | |
| The Members of the Ladue Board of Education, acting in their Capacity as School Board Members | ) ) ) | |
| Mr. Andy Bresler | ) | |
| Mr. Carolyn Jaeger | ) | |
| Mr. Sheldon Johnson | ) | |
| Mr. Jeff Kopolow | ) | |
| Ms. Sheri Glantz | ) | |
| Ms. Nancy Goldstein | ) | |
| Ms. Kisha Lee | ) | |
| (all in the capacities as Ladue School Board Members) | ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### Introduction

1. Plaintiffs Jane Doe and her son, John Doe, bring this action for injunctive relief against Ladue Horton Watkins High School, the Ladue School District and the Ladue Schools Board of Education for denying John Doe the opportunity to participate on the high school's junior varsity soccer team because of his age or gender in violation of the Age Discrimination Act ("ADA"), 42 U.S.C § 6101 *et seq.*, Title IX, 20 U.S.C. § 1681(a), and the District's own policies.

2. Defendants adopted a policy banning *male juniors* who did not make varsity soccer, and who would not be starters on junior varsity, from playing on the junior varsity team. The policy is not applied to sophomores, freshman or female athletes. John Doe has been excluded from junior varsity because of his age or gender, even though the varsity coach admits he was "on the bubble" for making varsity. An injunction should be entered without delay.

**Jurisdiction**

3. This Court has subject matter jurisdiction over this action under the ADA, § 1983, and Title IX.

4. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a) because they are closely related to Plaintiffs' federal claims, are part of the same case or controversy, and derive from a common nucleus of operative facts.

**Venue**

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and § 1400(a) because all Defendants maintain their principal places of business in the Eastern District of Missouri.

**The Parties**

6. Plaintiff Jane Doe is the mother and next friend of Plaintiff John Doe. They reside in the City of Ladue and within this District.

7. Defendant Ladue Horton Watkins is a public high school located in the City of Ladue, at 1201 Warson Rd, St. Louis, MO 63124, which is in this District.

8. Defendant Ladue School District is a state agency located at 9703 Conway Road, Ladue, MO 63124, which is in this District.

9. Defendant Board Members of the Ladue Board of Education is located at 9703 Conway Road, Ladue, MO 63124, which is in this District.

10. On information and belief, Defendants receive Federal funding from, *inter alia*, the U.S. Department of Education.

**Facts Relevant to All Claims**

**A. LHS Bars Juniors, Including John Doe, from the Junior Varsity Soccer Team**

11. John Doe, currently a junior at Ladue Horton Watkins High School ("LHS"), loves soccer.  Last year (fall of 2017) as a sophomore, he played on the men's junior varsity team and scored a total of five goals with two assists (well above average for the team).  The past two years (including this year), LHS fielded three men's soccer teams:  varsity, junior varsity, and freshman.

12. This year, as a junior, John Doe tried out again for soccer in August of 2018.  Based on his performance as a sophomore and his improvement in the off-season, he expected to make varsity or at least return to junior varsity for the 2018 season.  Last year, eight juniors made junior varsity, but in all prior years known to Plaintiffs, juniors did not make the junior varsity at LHS.

13. Although John Doe was determined to be "on the bubble" in terms of his skill-set, he was not selected for the varsity team.  Coach Dave Aronberg, the varsity soccer coach, wrote John Doe's mother:

> Let me start by saying how impressed I am of [John's] maturity growth over the span with which I've known him. It was truly a pleasure to be around him this summer and [John] is the type of kid that's very easy to root for. This year was the hardest year to make varsity of any year that I've coached. We essentially had 40 kids trying to make 24 spots on the varsity team. [John] was ***right on the bubble of making the team this year*** and ***has some impressive attributes including his attacking mentality and straight line speed.*** However, there were a few holes in his game including technical ability and game decision making that put him behind a number of kids. In the end, there were just too many kids who had a little better soccer skill and soccer IQ for him to make the [varsity] team.

(Ex. 10 to Maddock Decl., emphasis added.)

14. On August 13, 2018, LHS formally announced that only eight of the sixteen juniors who tried out for soccer had made the varsity team. The remaining eight juniors, including John Doe, were notified that LHS was cutting them out of the soccer program completely and they would not be allowed to play on the junior varsity team regardless of whether they were qualified by virtue of athleticism, skill level, tactical knowledge, motivation, or other factors.

15. Unlike juniors, sophomores and freshman who failed to qualify for varsity were not dismissed as a group from the soccer program but were considered for the junior varsity or freshman teams. Upon information and belief, freshman and sophomores on this year's junior varsity men's soccer team on average are younger than the juniors who were cut from the program.

16. Female students at LHS for the years 2012-2013 who were juniors were allowed to play on the women's junior varsity soccer team, and on information and belief, the female juniors in the years 2014-2016 were also allowed to play on the women's junior varsity.

17. Upon information and belief, Defendants' policy of removing non-varsity juniors from the soccer program has never been put in writing but was conceived by Coach Aronberg this year, but only with respect to the men's junior varsity program.

**B. As John Doe's Stepfather Exhausts Administrative Remedies, Explanations for the Policy Continue to Shift**

18. When asked by John Doe's stepfather about why juniors could not play on the junior varsity, Coach Aronberg blamed the parents of four juniors who had played on the junior varsity in the fall of 2017. Because they had groaned about their sons' playing time that season, Aronberg said he wanted to avoid the "aggravation" this year.

19. On or about August 14, 2018, John Doe's stepfather formally complained to LHS about Coach Aronberg's new policy. In response, the Defendants circled the wagons around

Coach Aronberg and refused to provide any interim relief, even though it was requested by John Doe's stepfather and is required by the District's own Policy AC (quoted below).  (Policy AC is Ex. 4 to the Maddock Decl.)

20. On September 13, 2018, Dr. Derrick Wallace, Director of Student Services, responded to the complaint on behalf of the District.  (Ex. 1 to Maddock Decl.)  Departing from Coach Aronberg's explanation, Dr. Wallace stated that juniors were no longer eligible for junior varsity because sophomores and freshman have more years of eligibility remaining for high school athletics.  Upon information and belief, this theory has not been adopted by LHS in any written policy.

21. On September 16, 2018, John Doe's stepfather appealed Dr. Wallace's decision and addressed each of the points in his September 13th letter.  (Ex. 3 to Maddock Decl.)

22. The next day, on September 17, 2018, John Doe's stepfather filed a complaint with the Office of Civil Rights ("OCR") in the Department of Education in its Kansas City office, but was advised that the OCR cannot provide injunctive relief to John Doe or force LHS or the District to place John Doe on the junior varsity soccer team.  (Ex. 8 to Maddock Decl.)

23. After receiving Ex. 4 to the Maddock Decl. on September 24, 2018, that same day John Doe's stepfather notified via certified letter the Attorney General, the Head of Health and Human Services, each member of the Ladue School Board, Dr. Jahnke, the Superintendent of the Ladue School District and Mr. Brad Griffith, the principal of LHS.  (Ex. 7 to Maddock Decl.).  At least some of the members of the Board or School District received their letters on or around September 25, 2018.

24. On September 24th, Dr. Donna Jahnke, Superintendent, affirmed Dr. Wallace's decision. (Ex. 4 to Maddock Decl.)  In it, she floated two new explanations for excluding juniors

from the junior varsity.  First, she explained that John Doe "and the other juniors who were cut from the program this year" were removed because "they would not have been starters on the JV team, based on their skill level and position played."  *Id*.  Second, Dr. Jahnke claimed that the no-junior's policy is not a "blanket rule," even though it was given blanket application this year.

25. Plaintiffs have diligently sought to exhaust their administrative remedies but aver that continuing to do so will result in irreparable harm.  Alternatively, Plaintiffs are relieved from the duty to exhaust administrative remedies because of the futility of doing so and the protected rights that are at stake.  The junior varsity soccer season will be over by the end of October 2018.  Over half the season is already gone.

**C. The Ladue School District Disregards Its Own Policies**

*Policy AC*

26. District Policy AC prohibits age and sex discrimination. (Ex. 6 to Maddock Decl.) It states:  "In accordance with law, ***the district strictly prohibits discrimination***, harassment and retaliation ***against*** employees, ***students*** or others ***on the basis of*** race, color, religion, socioeconomic status, marital status, sexual orientation, **sex**, national origin, ancestry, disability, *age*, genetic information or any other characteristic protected by law."  (Emphasis added.)  The prohibition on discrimination applies to the "educational environment", which shall be free from discrimination "in admission or access to, or treatment or employment in, its ***programs, services, activities*** and facilities." (Emphasis added).

*Policy IGD*

27. The District also has Policy IGD, "District-Sponsored Extracurricular Activities and Groups," recognizing "that not all of the district's goals and objectives can be met in formal classroom study and authorizes the use of necessary resources to provide student extracurricular activities and groups." (Ex. 5 to Maddock Decl.)

28. Policy IGD states:

> Students ***may belong to and take part in all extracurricular activities or groups <u>for which they are qualified</u>***, regardless of race, color, religion, sex, national origin, ancestry, disability ***or any other personal characteristic protected under the district's policy prohibiting discrimination and harassment.***
>
> \* \* \*
>
> ***The Board of Education believes that individual students should have opportunities to grow physically and intellectually through experience in self-discipline and contribution to a team effort made possible through competitive athletics.*** An athletic program shall be conducted in the district to further the development of students as competitors and spectators through friendly interschool and intraschool contests. ***The purpose of the program is to develop leadership, good sportsmanship and new friendships while encouraging regular school attendance, academic achievement and engagement in the school community.***
>
> In accordance with law, ***the district will provide equal athletic opportunities to both male and female students and will not illegally discriminate based on the quality of facilities, coaching or instruction, scheduling of practice times or events, or equipment and other related factors.***

(*Id.*, emphasis added.)

*Policy GBCA*

29. Policy GBCA is an anti-pay to play policy. (Ex. 9 to Maddock Decl.) Paragraph 6 states: "An employee will not use his or her position with the district to influence purchases made by students or parents/guardians that result in the financial gain of the employee, the employee's

spouse, the employee's dependent children or businesses with which they are associated, unless authorized by the Board of Education."

30. Paragraph 3 states: "Employees will not use their decision-making authority for the purpose of obtaining a financial gain that materially enriches them, their spouse or any dependent children in their custody by acting or refraining from acting for the purpose of coercing or extorting anything of actual pecuniary value."

31. That paragraph also states: "Employees may not act or refrain from acting by reason of any payment, offer to pay, promise to pay or receipt of anything of actual pecuniary value paid or payable, or received or receivable, to themselves or any third person. This includes a gift or contribution made or received in relationship to or as a condition of the performance of an official act."

32. Defendants have not followed their own Policies AC, IGD, and GBCA here.

### Count I – Violation of the Age Discrimination Act

33. Plaintiffs incorporate the above paragraphs by reference as if set forth herein fully.

34. Defendants operate a program or activity receiving federal financial assistance.

35. John Doe was, on the basis of age, excluded from participation in the junior varsity men's soccer program of Defendants.

36. Plaintiffs have gone to great lengths to exhaust their administrative remedies, but it would be futile to continue doing so prior to the filing of this action, because the junior varsity soccer season will be over before that process is foreseeably completed.

37. Plaintiff John Doe has already been irreparably harmed by attempting to exhaust administrative remedies, since over half of the soccer season has already expired.

38.     If John Doe fully exhausted remedies, the soccer season would be over, since the last game is scheduled to be played on October 25, 2018.

39.     Plaintiffs Jane Doe and John Doe request that the Court immediately grant a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction preventing LHS from discriminating against student athletes on the basis of age by showing a preference for younger players over older players, without consideration of the players' qualifications for the team, including but not limited to athleticism, experience, desire, tactical knowledge, skills and abilities.  Plaintiffs further request that the Court grant a TRO and Preliminary Injunction ordering LHS and the School Board to immediately allow John Doe to join the LHS men's junior varsity, participate in all practices and games (should the Junior Varsity coaches choose to put him into the game(s)), and be treated as if John Doe was on the team from the beginning of the season. Plaintiffs also request their costs and attorney fees incurred in pursuing this suit.

### Count II – Violation of Title IX

40.     Plaintiffs incorporate the above paragraphs by reference as if set forth herein fully.

41.     The right to compete based upon non-discriminatory qualifications for spots on extracurricular sport teams is a fundamental right guaranteed under Title IX.

42.     Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

43.     Based upon the review of the rosters of women's' junior varsity teams since 2012 that the Plaintiffs can locate, compared with the rosters of the men's junior varsity soccer teams that Plaintiffs can locate since 2015, female junior students have been allowed to play on the junior varsity while men have not been allowed to play on the junior varsity.

44. On information and belief, both programs are controlled by Coach David Aronberg.

45. Thus, Aronberg preferentially treats female junior players better than male junior players by allowing them access to spots on the junior varsity, instead of having to compete for the limited spots on the varsity against seniors, all other juniors, sophomores and even freshmen.

46. Stated differently, the female juniors are eligible to compete for approximately 50 spots in the soccer program, while the male juniors are only allowed to compete for twenty-five spots on the junior varsity.

47. This is a violation of Title IX by providing benefits based on gender and not the student's qualifications.

48. Plaintiffs Jane Doe and John Doe request that the Court grant a Temporary Restraining Order, a Preliminary Injunction and a Permanent Injunction preventing LHS from discriminating against student athletes on the basis of gender by showing a preference for female students over male students, without consideration of the players' qualifications for the team, including but not limited to athleticism, experience, desire, tactical knowledge, skills and abilities. Plaintiffs further request that the Court grant a TRO and Preliminary Injunction ordering LHS and the School Board to immediately allow John Doe to join the LHS men's junior varsity, participate in all practices and games (should the Junior Varsity coaches choose to put him into the game), and be treated as if John Doe was on the team from the beginning of the season. Plaintiffs also request their costs incurred in pursuing this suit.

**Count III – Breach of Policy AC and Request for Injunctive Relief**

49. Plaintiffs incorporate the above paragraphs by reference as if set forth herein fully.

50. Ladue District Policy AC is an administrative rule, regulation, or contract issued by the School Board, an agency of the State of Missouri, and done so, on information and belief, in compliance with the Missouri Administrative Procedure Act.

51. The District, LHS, and the employees of both are all bound to follow the Policies. Accordingly, the students are entitled to enforce Policies AC and IGD as a binding administrative rule or written contract. Thus, Plaintiffs are allowed to seek judicial relief from the District's refusal to provide Plaintiffs interim relief.

52. The Board breached Policy AC by failing to provide permanent relief from age discrimination and interim relief from age discrimination by Coach Aronberg, when he refused to allow juniors in school year 2018-19 to play on the LHS men's junior varsity soccer team.

53. Additionally, Plaintiff John Doe is entitled to interim relief due to gender discrimination.

54. Plaintiffs Jane Doe and John Doe request that the Court grant a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction preventing LHS from discriminating against student athletes on the basis of age or gender by showing a preference for younger players over older players, and women over men, without consideration of the players' qualifications for the team, including but not limited to athleticism, experience, desire, tactical knowledge, skills and abilities. Plaintiffs further request that the Court grant a TRO and Preliminary Injunction ordering LHS and the School Board to immediately allow John Doe to join the LHS men's junior varsity, participate in all practices and games (should the Junior Varsity

coaches choose to put him into the game), and be treated as if John Doe was on the team from the beginning of the season. Plaintiffs also request their costs incurred in pursuing this suit.

## Count IV – Breach of Policy IGD

55. Plaintiffs incorporate the above paragraphs by reference as if set forth herein fully.

56. Policy IGD is an administrative rule, regulation, or contract issued by the School Board, an agency of the State of Missouri, and done so, on information and belief, in compliance with the Missouri Administrative Procedure Act.

57. Policy IGD was violated because the District and LHS have illegally discriminated on the basis of age, the requirements of making varsity (based on skill) versus making junior varsity (years of eligibility) and on the basis of attendance at Aronberg's soccer summer clinic, in violation of MSHSAA rules.

58. Plaintiffs Jane Doe and John Doe request that the Court grant a Temporary Restraining Order, a Preliminary Injunction and a Permanent Injunction preventing LHS from discriminating against student athletes on the basis of age or gender by showing a preference for younger players over older players, or women or men, without consideration of the players' qualifications for the team, including but not limited to athleticism, experience, desire, tactical knowledge, skills and abilities. Plaintiffs further request that the Court grant a TRO and Preliminary Injunction ordering LHS and the School Board to immediately allow John Doe to join the LHS men's junior varsity, participate in all practices and games (should the junior varsity coaches choose to put him into the game), and be treated as if John Doe was on the team from the beginning of the season. Plaintiffs also request their attorneys' fees and costs incurred in pursuing this suit.

### Count V – Breach of Policy GBCA

59. Plaintiffs incorporate the above paragraphs by reference as if set forth herein fully.

60. Policy GBCA is an administrative rule, regulation, or contract issued by the School Board, an agency of the State of Missouri, and done so, on information and belief, in compliance with the Missouri Administrative Procedure Act.

61. On information and belief, Coach Aronberg engaged in a conflict of interest by favoring student athletes who attended his soccer summer camps - and paid him a fee - over those who did not participate or had only partial participation.

62. On information and belief, Coach Aronberg favored student athletes who attended his soccer summer camps - and paid him a fee - over those who did not participate or had only partial participation team in violation of Policy GBCA, and then used age discrimination (i.e., no juniors on the JV) as one of the ways that he justified not allowing otherwise qualified students such as John Doe on the JV.

63. Plaintiffs Jane Doe and John Doe request that the Court grant a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction preventing LHS and its coaching staff from implementing "pay to play" schemes or otherwise engaging in illegal conflicts of interest. Plaintiffs further request that the Court grant a TRO and Preliminary Injunction ordering LHS and the School Board to immediately allow John Doe to join the LHS men's junior varsity, participate in all practices and games (should the Junior Varsity coaches choose to put him into the game), and be treated as if John Doe was on the team from the beginning of the season. Plaintiffs also request their costs incurred in pursuing this suit.

Respectfully submitted,

SOWERS ERNST LLC


By:     /s/ Edwin C. Ernst, IV
      Edwin C. Ernst, IV #MO57521
      13321 N. Outer Forty Rd., Suite 600
      St. Louis, Missouri 63017
      (314) 690-1744 Telephone
      (314) 448-4300 Facsimile
      ece@sowersernst.com

and

CAREY, DANIS & LOWE

      Paul A. Maddock #MO42103
      8235 Forsyth Blvd. Ste. 100
      St. Louis, Missouri 63105
      (314) 678-1205 Telephone
      (314) 339-8393 Facsimile
      pmaddock@careydanis.com

Attorneys for Plaintiffs