**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **Jane Doe, as Friend of John Doe,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | **Case No. 4:18-cv-01637** |
| ) | |
| **Ladue Horton Watkins High School,** ) | |
| **et al.** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**TEMPORARY RESTRAINING ORDER**

COME NOW Defendants Ladue Horton Watkins High School, Ladue School District, and the members of the Board of Education, by and through their attorneys, TUETH KEENEY COOPER MOHAN & JACKSTADT, P.C., and hereby submit their Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order, as follows:

**INTRODUCTION**

Plaintiff brings this case on behalf of John Doe, a junior at Ladue Horton Watkins High School, who tried out for the High School soccer program.  John Doe was not selected for the varsity team.  He, along with 6 other juniors, 4 seniors, and 6 sophomores, were also not selected for the junior varsity team.  Plaintiff disagrees with this decision and has filed this action in an effort to supersede the coaches' decision-making and have John Doe assigned to the junior varsity team.

Contrary to the allegations in Plaintiff's Motion, the coaches' decisions regarding team assignments was not based on age or sex – or any other unlawful factor.  Rather, the decisions about who was selected for the junior varsity team was based on several legitimate,

nondiscriminatory factors, including the skill levels of each student who tried out for the program.  Specifically, students trying out for the team were rated on endurance, one v. one defending, team defending, first touch on the ball, receiving touch, dynamic movement, passing ability, decision making coachability, one v. one moves, and size, speed and strength. Additionally, the coaches, in their discretion, considered the needs of the team as a whole, which included ensuring that the appropriate number of students skilled at various positions were assigned to the team, as well as the development of the competitive program as a whole.  The coaches, in their discretion, determined that it is generally more beneficial to the development of the program to assign those sophomores who have the necessary skills to play on junior varsity to the team instead of juniors who are not likely to advance further in the program.  This directly benefits the success of the program, as it allows those sophomores – who generally have an additional year of eligibility compared to juniors under the Missouri State High School Activities Association ("MSHSAA") bylaws – the opportunity to further develop their skills and be even stronger players for the program when and if they reach the varsity level.  This is not a blanket rule or policy, as whether or not juniors will be selected for the junior varsity team is determined on a yearly basis, based on the number of students who try out and the needs of the program. As demonstrated below, it is not in any way based on age or gender.

Importantly, <u>juniors as a group are not excluded from the soccer program</u>.  There are eight (8) juniors playing on the varsity team this year.  The simple fact is that John Doe did not have the skill level to play at the varsity level, which is the level at which the coaches generally assign players who are juniors.[1]  He was not unfairly prohibited from accessing the program

---

[1] Similarly, seniors are typically only assigned to varsity teams.  Thus, the seniors who were not selected for the varsity team were also not assigned to the junior varsity team.

because of either his age or his gender.  Plaintiff does not dispute that had John Doe demonstrated the necessary skill level to play for varsity, he would have been part of the Ladue high school soccer program.  Accordingly, Plaintiff cannot demonstrate that John is likely to suffer irreparable harm, nor can he demonstrate a likelihood of success on the merits.  Moreover, granting Plaintiff's Motion for a Temporary Restraining Order requiring John Doe to be placed on the team will substantially harm the operation of the District's athletic program, and is against the public interest, as set forth below.

## STANDARD OF REVIEW

In determining whether a temporary restraining order should be issued, a district court must consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on the other party; (3) the probability of success on the merits; and (4) the public interest.  *Dataphase Systems, Inc., v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981).  "In balancing the equities, no single factor is determinative and if the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should relief be denied, the moving party faces a *heavy burden* of demonstrating he is likely to prevail on the merits."  *K.L. v. Missouri State High Sch. Activities Ass'n.*, 178 F. Supp. 3d 792, 798 (E.D.Mo. 2016)(emphasis in the original).

## ARGUMENT

**A.    Plaintiff Has Not Shown that John Doe Will Suffer Irreparable Harm.**

As recognized by Plaintiff, "in order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996).  Here, Plaintiff

cannot establish that failing to place John Doe on the junior varsity team will cause him certain and harm of such imminence that the Court should grant the requested relief.

Plaintiff bases her allegation that John Doe will be irreparably harmed if not placed on the junior varsity team before the end of the season on an alleged – and speculative – statement by Coach Aronberg that "if John Doe is not allowed to play this year, he has very little chance of making Varsity next year."  However, Plaintiff fails to recognize that even if John Doe is placed on the team today, he will be ineligible to play until the very last game of the season because he has not participated (and cannot at this point in the season) in a sufficient number of practice sessions in order to be eligible to play in any contest before the very last one scheduled. MSHSAA By-Law 3.9.1.  Therefore, placing John Doe on the team at this date means only that John Doe will be listed on the roster, can practice, and can possibly participate in a single game.

John Doe is also not precluded from participating in sports.  Distinct from *Adams By and Through v. Baker*, John Doe was allowed to try out for the soccer team.  He simply was not selected for the team, based on non-discriminatory factors.  He also is allowed to try out for other District sports teams, including sports that have "no cut" policies (wrestling, football, swimming, track and field, and cross country).  And, John Doe can improve his skills with the hopes of being selected for the varsity team next year by joining a community soccer team.  In fact, John Doe was not selected for the soccer program his freshman year and subsequently made the junior varsity team as a sophomore.  Not being selected for the team during his freshman year did not irreparably harm him.

Furthermore, the harm John Doe describes is not in the nature of a harm to his legal rights.  *Gonyo v. Drake University,* 837 F. Supp. 989, 994 (S.D. Iowa, 1993) (holding that students did not establish irreparable harm due to elimination of wrestling program because there

was no harm to their legal rights).  There is no constitutional right to participate in high school

athletics, and therefore, while certainly disappointing to John Doe, he cannot establish

irreparable harm.  *State ex rel. Missouri State High School Activities Ass'n v. Shoenlaub,* 507

S.W. 2d 354, 359 (Mo. Banc 1974) (holding that a high school student's eligibility to participate

in interscholastic athletics is a "privilege").

 In sum, while not being able to play on the team is clearly disappointing to John Doe, the

harm from not playing is not so great or imminent to warrant the extraordinary remedy of

ordering the Ladue School District to place him on the team.

**B.** **Entry of a TRO Placing John Doe on the Team Will Cause Harm to the District.**

 On the contrary, the potential harm to the District is significant.  As an initial matter,

John Doe is not the only junior who was cut from the soccer program.  Six other juniors were cut

under the same circumstances as John Doe.  Therefore, while Plaintiff alleges that there is

capacity on the junior varsity team for John Doe (based on their own assessment of what is an

appropriate size for a junior varsity team), Plaintiff ignores that if John Doe is placed on the

team, the District will need to offer the same opportunity to the six other juniors who were also

not assigned to the junior varsity team.  This substantially changes the dynamic of the team for

the remainder of the season and causes a significant impact on those students already on the

team.  Additionally, boys' soccer is not the only program that follows this philosophy for varsity

and junior varsity team assignments.  Generally, juniors are not assigned to junior varsity teams

in baseball, boys' basketball, girls' basketball, and girls' soccer.  Thus, there are many juniors

who, under the theory advanced by Plaintiff, could also claim to be entitled to be placed on

teams.

Additionally, under Plaintiff's theory that the District cannot use grade level as a factor in determining team placement, maintaining a boys' "C team," which is typically limited to freshman, would be a violation of the law.   That team was added in the 2017-2018 school year because of the significantly increasing interest in soccer, specifically to give boys a greater opportunity to participate in the high school soccer program.  Removal of that team would substantially reduce the opportunity for boys to participate in high school soccer, causing many more students to be cut during the tryout process.  While the District is sympathetic to John Doe, this is harm on a much greater scale than one student's disappointment in not making the team.

**C.      Entering a TRO Requiring a School District to Place a Student on an Athletic Team is Against the Public Interest.**

Every year, every season, for every sport, students try out for and are not selected for teams for a variety of reasons.  The law is well-established that participation in interscholastic athletics is not a property right but a privilege that a school can withdraw if a student fails to qualify for the privilege.  *Schoenlaub*, 507 S.W.2d 354, 359 (Mo. Banc 1974.)  Moreover, it is a privilege that is best left to administrators and coaches to operate in the manner that they determine is best to achieve the goals of the program.  "Along with entrusting the education of our children to teachers and administrators, we also entrust the control and supervision of the extracurricular activities incident to that education.  Implicit in the responsibility for these activities is the power to make reasonable rules and regulations. . . It is also obvious that [schools] are in the most advantageous position to appreciate the regulations under which they must act to achieve desired goals."  *In re U.S. ex rel. Mo. State High Sch. Activities Ass'n*, 682 F.2d 147, 152, fn 6 (citing *Art Gaines Baseball Camp, Inc. v. Houston*, 500 S.W.2d 735, 740-41 (Mo. App. 1973)).  Therefore, as a matter of public policy, "judicial intervention in school policy

should always be reduced to a minimum." *In re U.S. ex rel. Mo. State High Sch. Activities Ass'n*, 682 F. 2d at 152-53.

This is especially true when dealing with decisions regarding athletic eligibility, which is inherently based on the subjective assessment of skills and other factors relevant to the success of the particular program, which coaches are in the best position to assess. Here, John Doe was not categorically excluded from the soccer program based on any protected characteristic; instead, he was not selected after a try out that included an assessment of his skills and the needs of the program. Granting a TRO under these circumstances empowers parents to challenge any unfavorable team selection decision by simply alleging some type of discriminatory treatment and seeking a TRO requiring a student to be placed on the team – even when there is no likelihood of success on the merits, as in this case. Due to the short nature of athletic seasons, this type of TRO overrides the discretion of coaches and the legitimate decisions made during the try-out process, putting courts in the position of selecting students for athletic teams without the benefit of actually having assessed the student's skills or the needs of the program. As demonstrated above by the harm that a TRO will cause to the Ladue School District in this case, this is an untenable position for both the courts and high school athletic programs.

**D.      Plaintiff Is Unable to Demonstrate a Likelihood of Success on the Merits.**

Even if John Doe is able to show that he will suffer some harm by not being placed on the team, it is minor. And the District has demonstrated that it will suffer injury, and that the issuance of a TRO is contrary to the public interest. However, "the dispositive factor . . . is not the likelihood of irreparable harm, but rather plaintiff's inability to demonstrate either probable success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation." *Barnhorst v. Mo. State High Sch. Activities Ass'n,,* 504 F. Supp. 449

(W.D.Mo. 1980).  Here, Plaintiff is unable to establish probable success on the merits of any of her claims.

1.   ***Plaintiff Failed to Comply with Jurisdictional Requirements Under the Age Discrimination Act; Therefore, Count I of Plaintiff's Complaint Should Be Dismissed and Plaintiff's Motion for Temporary Restraining Order Should Be Denied.***

The Age Discrimination Act ("ADA") states, in relevant part,

> When any interested person brings an action in any United States district court . . . such interested person shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed . . .

42 U.S.C. § 6104(e)(1).  "A federal court lacks subject matter jurisdiction over a suit brought pursuant to the Act if this prerequisite is not met."  *Wieker v. Mesa County Valley School District No. 51*, No. CIVA05CV806-WYD-CBS, 2007 WL 595629, at *9 (D. Colo. Feb. 21, 2007) (citing *Curto v. Smith,* 248 F.Supp.2d 132, 145 (N.D.N.Y.2003).

Additionally, "before bringing an action under the Age Discrimination Act, the plaintiff must exhaust administrative remedies."  *Alexander v. New Mexico Vocational Rehab.*, No. 1:07-CV-0230 MCA/LCS, 2008 WL 11399605, at *6 (D.N.M. Sept. 25, 2008) (citing 42 U.S.C. § 6104(e)(2), (f); 45 C.F.R. § 90.50).  "Administrative remedies are exhausted if 180 days have elapsed since the complainant filed a complaint before the relevant federal funding agency and the agency has made no finding, or alternatively, the agency has found in favor of the complainant."  *Id.*  This requirement is jurisdictional; thus, "dismissal is the correct response to the failure to exhaust the administrative remedies provide by the ADA."  *Rannels v. Hargrove*, 731 F. Supp. 1214, 1221 (E.D. Pa. 1990); *see also Brownscombe v. Dept. of Campus Parking*,

203 F.Supp.2d 479, 483 (D. Md. 2002) (dismissing an ADA claim under Rule 12(b)(6) for failure to allege notice and exhaustion of administrative remedies).

Plaintiff claims that she has "diligently sought to exhaust their administrative remedies"; however, she has admitted that they only provided the required notice under the ADA a few days ago – on September 24, 2018.  Plaintiff's Motion for Temporary Restraining Order, p. 4 – 5.[2] Plaintiff also just filed her complaint with the Office of Civil Rights ("OCR") on September 17, 2018, and thus, has not given the OCR the requisite 180 days to investigate the complaint.  Plaintiff's Motion for Temporary Restraining Order, p. 4.

Moreover, Plaintiff has admitted that she has failed to fully exhaust her administrative remedies under the ADA.  Plaintiff's Complaint, at ¶¶ 36 – 38.  Because Plaintiff has failed to comply with the jurisdictional requirements and exhaust their administrative remedies as required under the ADA, Count I of Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction and Plaintiff's Motion for Temporary Restraining Order should be denied.

### 2. Even if Plaintiff Had Exhausted Her Administrative Remedies, Plaintiff Cannot Demonstrate that the District's Decision Regarding John Doe's Participation in the Soccer Program Was Based on Age.

In the Motion, Plaintiff argues that she can establish that John Doe was discriminated against on the basis of age because "Defendants selected non-starters for the junior varsity team based on their class level – sophomore or freshmen versus junior, which is a proxy for younger versus older – and paid no attention to skill level."  Plaintiff's Motion for Temporary Restraining Order, p. 11.  This is simply incorrect.  As demonstrated above, the District did take into account

---

[2] While Plaintiffs claim they "are relieved from the duty to exhaust administrative remedies because of irreparable harm, the futility of doing so and the protected rights that are at stake," they have provided no support for that assertion.  *See* Plaintiff's Motion for Temporary Restraining Order, p. 5.

skill level during the selection process.  More importantly, however, using a student's grade level is <u>not</u> a proxy for age.  The ages of students in a particular grade level can vary based on when the student started school, whether the student was ever held back or promoted, and, at the high school level, the number of credits earned.  Thus, it is simply incorrect that grade level is a proxy for age.  The regulations implementing the ADA make this clear in their definitions:  "Age-related term means a word or words that necessarily imply a particular age or range of ages (e.g., 'children,' 'adult,' 'older persons,' but *not* 'student' or '*grade*').  34 C.F.R. § 110.3 (emphasis added).  Thus, the use of grade-level as one of the factors for determining team assignment does not violate the ADA.[3]

Additionally, to the extent grade level could be considered to be an age-related term, it was not John Doe's grade alone that resulted in the decision not to select him for the soccer program – it was the fact that he did not have the skill level for the varsity team, and because he only had one more year of eligibility under MSHSAA's bylaws to play, which meant his assignment to the junior varsity team would not maximize player development.  *See Butts v. Nat'l Collegiate Athletic Ass'n*, 600 F. Supp. 73, 76 (E.D.Pa. 1984).  Even if this practice has a disproportionate effect on persons of different ages, MSHSAA eligibility and time for player development are factors that bear a direct and substantial relationship to the normal operation of the program, which seeks to develop soccer teams that are highly competitive and successful over the long-term.  34 C.F.R. § 110.13.  Thus, Plaintiff is unable to demonstrate even a "fair chance" of success on the ADA claim.

---

[3] Under Plaintiff's theory, seniors would have to be permitted to play on the junior varsity team, and the "C team" would not be permissible at all.  Additionally, this would call into question the myriad of distinctions that made by school districts based on grade levels.

### 3. *Plaintiff Cannot Demonstrate that the District's Decision Regarding John Doe's Participation in the Soccer Program Was Based on Sex.*

Plaintiff is also unable to establish even a remote likelihood of success on her Title IX claim.  Under Title IX, "no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient."  34 C.F.R. § 106.41.  Here, Plaintiff alleges that the District violated Title IX because female juniors were allowed to participate on the girls' junior varsity team.  Plaintiff is incorrect.  The District uses the same philosophy for athlete selection for the girls' teams as the boys' teams.  Like the boys' team, no juniors played on the girls' junior varsity soccer team in their most recent season.  A review of rosters from previous years demonstrates that junior girls only participated on the junior varsity team in two of last six seasons:  during the 2016-2017 season, one junior was assigned to play junior varsity because she otherwise would have been the only student not selected for a team.  In 2012-2013, two juniors played on the junior varsity team because of the limited number of girls who tried out for soccer.  In that year, there were only 11 total students on the junior varsity team.  Thus, the girls are treated in the same manner as the boys, and any distinction in the number of female juniors on the junior varsity team is based on the number of students trying out for the program, not sex.  John Doe cannot demonstrate that he was treated differently than female students, so he is unable to state a claim for discrimination under Title IX.  Thus, the TRO should be denied.

### 4. *Plaintiff Has No Right to Judicial Review for Alleged Violations of the District's Board Policies.*

The District's Board Policies AC, IGD, and GBCA are not "rules" under the Missouri Administrative Procedures Act.  A "rule" as defined by § 536.010(6) is an "agency statement of

general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency." Mo. Rev. Stat. § 536.010(6). However, this definition has one notable exception:  the term "rule" does not include "[a] statement concerning only the internal management of an agency and which does not substantially affect the legal rights of, or procedures available to, the public or any segment thereof."  Mo. Rev. Stat. § 536.010(6)(a).  Here, Board Policies AC, IGD, and GBCA provide guidance to District employees and students on the intra-agency management of its programs and practices.   Moreover, these management practices do not substantially affect any of John Doe's established legal rights as John Doe's ability to be a member of the District's junior varsity soccer team is a privilege, not a legal right.  *Schoenlaub*, 507 S.W.2d at 359.

Even if John Doe had a legal right substantially affected by the District's policies, which Defendants expressly deny, these policies are not "rules" under Section 536.010(6) as they were never promulgated as rules. "Not everything that is written or published by an agency constitutes an administrative rule." *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 159 S.W.3d 361, 365 (Mo. banc 2005). In fact, "only rules promulgated by an administrative agency with properly delegated authority have the force and effect of law." Section 536.021 provides these promulgation requirements:

> No rule shall hereafter be proposed, adopted, amended or rescinded by any state agency unless such agency shall first file with the secretary of state a notice of proposed rulemaking and a subsequent final order of rulemaking, both of which shall be published in the Missouri Register by the secretary of state as soon as practicable after the filing thereof in that office . . . .

Mo. Rev. Stat. § 536.021.

In this case, the District did not promulgate or even attempt to promulgate Board Policies AC, IGD, and GBCA. Thus, these policies cannot be considered "rules" under Section 536.010(6),

and as such, Plaintiffs have no legal right to challenge the application of these policies under the MAPA.  *See United Pharmacal Co. of Mo., Inc.*, at 365.

Though not entirely clear, it appears that Plaintiff is also attempting to argue that Board Policies AC, IGD, and GBCA are contracts.  *See* Plaintiff's Complaint, ¶¶ 50 – 51; 56; 58.  Plaintiff, however, has not and cannot allege the basic elements of a contract.  *See* Plaintiff's Complaint; *see also State ex rel. Career Aviation Sales, Inc. v.* Cohen, 952 S.W.2d 324, 326 (Mo. App. E.D. 1997) (stating the essential elements of a valid contract are offer, acceptance, and bargained for consideration).  Additionally, Missouri Revised Statute Section 432.070 provides that all contracts with school districts *must* be in writing and signed by the parties.  Mo. Rev. Stat. § 432.070; *see also Elam v. Waynesville R-VI Sch. Dist.*, 676 S.W.2d 880, 886 (Mo. App. S.D. 1984) (overruled on other grounds) (emphasis added).

In this case, there was no offer, acceptance, or bargained for consideration and these policies have not been signed by the Plaintiff.  *See* Plaintiff's Exhibits 5, 6, and 9.  Therefore, the District's Board Policies are not enforceable contracts and Plaintiff cannot seek judicial review of any alleged violations of these policies under a breach of contract theory.  Because Plaintiff cannot seek judicial review of alleged violations of the District's Board Policies, Plaintiff's Motion for Temporary Restraining Order should be denied.

## CONCLUSION

As demonstrated above, the balance of equities weighs strongly in favor of the District. The potential harm suffered by John Doe, if any, is minimal, while the potential harm to the District is significant.  Additionally, entering a TRO under these circumstances, which would allow parents to circumvent the team selection decisions made by coaches by going to federal court, is against the public interest.  Most importantly, Plaintiff has not demonstrated <u>any</u>

likelihood of success on the merits of her claims.  Therefore, Defendants respectfully request that Plaintiff's Motion for Temporary Restraining Order be denied, and for such further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

TUETH, KEENEY, COOPER, MOHAN & JACKSTADT, P.C.

By: ___/s/ Michelle H. Basi_____
    Celynda L. Brasher #MO38243
    Michelle H. Basi #MO54943
    Mandi D. Moutray #66096
    34 N. Meramec, Suite 600
    St. Louis MO 63105
    314.880.3600
    314.880.3601
    cbrasher@tuethkeeney.com
    mbasi@tuethkeeney.com
    mmoutray@tuethkeeney.com

*Attorneys for Defendants*

14

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, the foregoing was filed via the Court's electronic filing system and delivered via the Court's electronic filing system, to the following:

Edwin C. Ernst, IV #MO57521
Sowers Ernst LLC
13221 N. Outer Forty Rd., Suite 600
St. Louis, Missouri 63017
Telephone: 314.690.1744
Facsimile: 314.448.4300
ece@sowersernst.com

Paul A. Maddock #MO42103
Carey, Danis & Lowe
8235 Forsyth Blvd., Suite 100
St. Louis, Missouri 63105
Telephone: 314.678.1205
Facsimile: 314.339.8393
pmaddock@careydanis.com

*Attorneys for Plaintiff*

_____/s/ Michelle H. Basi_____